## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 09-CIV-21793-KING/GARBER

**LINDA FAY JOHNSON,**

      Plaintiff,

v.

**MICHAEL J. ASTRUE,**
Commissioner of Social Security,

      Defendant.

_____/

### <u>ORDER</u>

      **THIS CAUSE** is before the Court on Plaintiff Linda Fay Johnson's Motion for Summary Judgment [DE 17] and Defendant Michael J. Astrue, Commissioner of Social Security's Motion for Summary Judgment [DE 21].  The Court has received the concomitant Responses and Replies.  The issue before this Court is whether the record contains substantial evidence to support the denial to Plaintiff, Linda Fay Johnson (hereinafter "Johnson" or "Plaintiff").

### I. FACTS

      On October 20, 2005 and November 17, 2005, the Plaintiff filed applications for disability insured benefits and supplemental security income, respectively, alleging a disability onset date of July 21, 2005. (R. 84, 804).[1] Plaintiff indicated that she was born in 1958, and alleged disability due to depression, anxiety, panic, mood swings, arthritis, and emphysema. (R. 84, 100). She completed the tenth grade and worked in the past as a janitor. (R. 100, 105).

_____

      [1]All references are to the record of the administrative proceeded filed as part of the Defendant's answer.

At a May 10, 2005 behavioral medicine appointment, Plaintiff reported depression related to problems dealing with her landlord. (R. 302). Medical records dated July 2005 through May 2006, from Jackson Memorial Hospital show Plaintiff was admitted in July 2005, following a diagnosis of diabetic ketoacidosis. (R. 239-52, 537-41). During her hospital course, Plaintiff was treated for Diabetes, a urinary tract infection, chronic obstructive pulmonary disease and hypertension. (R. 240). In September 2005, a sonogram of the thyroid revealed a large heterogenous mass. (R. 380).

On October 28, 2005, Plaintiff presented to the hospital after she ran out of thyroid medication. (R. 237). Two weeks later, Plaintiff was seen at Bascom Palmer Eye Institute with complaints of redness, itching and tearing of both eyes. (R. 195-197). She was treated and released. (R. 197). Ten days later, she was seen at the hospital for an infected toe. (R. 284-86).

Plaintiff underwent a consultative examination with Afzal H. Kahn, M.D., on December 27, 2005. (R. 198-199). She had a normal gait and station, and no difficulty getting off the exam table, heel and toe walking, hopping, or squatting (R. 198). She had a large thyroid mass in the lower anterior neck which was mobile and non-tender. *Id.* She had no edema, ulcers, varicosities, skin lesions, clubbing, or cyanosis in any of her limbs. *Id.* Musculoskeletal examination was "unremarkable" with normal range of motion in all joints with no signs of inflammation. (R. 199). Plaintiff's grip and dexterity were normal. She had no motor or sensory deficits. *Id.* Plaintiff was alert and oriented with apparently normal mental status. *Id.* Dr. Kahn's diagnoses was chronic essential hypertension, chest pain, possible angina; thyroid dysfunction with goiter, on supplements; history of non-insulin dependent diabetes and hyperlipidemia; history of c-sections; and some joint pains. *Id.*

Two days later, Plaintiff was seen again at Jackson memorial Hospital for fever, chills, and vomiting. (R. 282). Plaintiff had not taken her blood pressure medication for one week. *Id.* She was assessed with pharyngitis, and instructed to restart her medication. (R. 283).

On January 5, 2006, Plaintiff underwent a consultative psychological evaluation with Alejandro J. Arias, Psy.D. (R 205-207). Plaintiff reported high levels of depression, severe fatigue, and a lack of energy. (R. 205). Her reported symptoms included poor attention and concentration. *Id*. She occasionally took double doses of her medication. *Id*. During her mental status examination, Plaintiff was cooperative and motivated, despite being aggravated over her recent eviction from her apartment. (R. 206). Her mood was depressed and tearful, and her affect was extremely angry. *Id*. She was fully oriented and her immediate recall was intact. *Id*. Plaintiff's recent memory was impaired, and she was able to name three of the last four presidents *Id*. She was unable to perform serial sevens due to lapses in attention and concentration. *Id*. Plaintiff's insight and persistence were "good," but her pace was "sometime slow" and her concentration was impaired due to high levels of anger. (R. 207). Dr. Arias's impression was major depressive disorder, recurrent, moderate; and he opined Plaintiff would benefit from supervision in managing her personal funds. *Id*.

On January 27, 2006, Plaintiff reported feeling "much better," but continued to have some diabetes symptoms including frequent thirst and urination. (R. 279). Her hypertension was under better control, but she was not taking medication for her hyperlipidemia. (R. 280). She was instructed to follow up in four weeks. (R. 280).

Plaintiff was again admitted to the hospital on April 18, 2006, for pneumonia. (R. 234-36, 508). Plaintiff was using no medication at the time of her admission and continued to smoke**.** (R. 235). Catherine J. Willis, M.D., noted that "[Plaintiff] is totally noncompliant with her medicines. But she says that is because she cannot afford them in spite of the fact that she can continue to smoke." (R. 508). On intake, Dr. Willis assessed pneumonia, smoking history, diabetes, hypertension, and total "non-compliance." (R.  510).

During Plaintiff's admission, it was discovered that she was positive for HIV. She was counseled on the benefits of HIV treatment. (R. 498). Plaintiff was also counseled on the availability of low cost HIV treatment through the South Florida AIDS Network  (R. 502). Plaintiff, however was very adamant that she wanted to go home because she was feeling better and unwilling to stay in the hospital. (R. 498). She was assessed with pneumonia, hyperlipidemia, hypertension and medical noncompliance. (R. 236).  On June 1, 2006, Plaintiff was not taking her blood pressure medicine. (R. 601, 604). She was given a new prescription. (R. 601).

Larry Benovitz, M.D., P.A., performed a psychiatric consultative evaluation on June 26, 2006. (R. 441-448). Plaintiff admitted that she was only partially compliant with mental health treatment and she was not taking any medication for HIV. (R. 443, 446). During his mental status examination, Dr. Benovitz noted Plaintiff was cooperative with good eye contact. (R. 443). Her speech was spontaneous with some tangentiality and circumstantiality. *Id*.  Plaintiff's mood and affect were depressed, but she denied auditory hallucinations. (R. 444). She was oriented in all spheres, and her concentration and task persistence were fair. *Id*. Dr. Benovitz diagnosed depression and opined Plaintiff had "fair" concentration and task persistence and that she would deteriorate in a work or work-like setting. (R. 446-448).

That same day, Jozef Hudec, M.D., a consultant physician, examined Plaintiff. (R. 449-451). Plaintiff presented with complaints of hypertension, diabetes mellitus, hypothyroidism, depression and arthritis. (R. 449). On examination, Dr. Hudec noted Plaintiff was unable to walk on her toes and heels. (R. 450). She reported tenderness over the radial side of her right wrist and over her right knee with flexion decreased to ninety degrees. (R. 51). Dr. Hudec noted Plaintiff appeared depressed. *Id*. He diagnosed hypertension, diabetes mellitus, hyperthyroid, goiter, depression and right knee pain. *Id*.

Plaintiff was hospitalized with pneumonia on September 13, 2006. (R. 490). She had been diagnosed with HIV in April 2006, but had been non-compliant on all of her medication and has a history of previous repeated pneumoniae. *Id*. Upon discharge three days later, Plaintiff declined to begin antiretroviral therapy for HIV. (R. 488).

On December 12, 2007, Dr. William Pittack, a treating psychiatrist, completed a mental assessment wherein he indicated Plaintiff's ability to make most occupational adjustments and all performance adjustments were seriously limited, but not precluded. (R. 564-567). He also assessed that Plaintiff's ability to maintain personal appearances and demonstrate reliability were seriously limited due to depression. (R. 565).

In April 2007, while Plaintiff was seen for a blood pressure check, it was noted she was on no medication. (R. 595). On June 22, 2007, the claimant was admitted with fever, cough and sputum production and found to have pneumonia. (R. 783-89). Once clinically improved, Plaintiff sought discharge the following day against medical advice. *Id*.

In December 2007, Plaintiff was noted to have been off her hypertension medication for two weeks and her blood pressure was out of control. (R. 588). She was also not taking any medication to control her HIV. *Id*.

Medical records dated January 2008 through July 2008 from Citrus Health Network show that in the six sessions, Plaintiff was a no-show for two sessions, was assessed with an "ok" or "sad" mood and noted to be "depressed." (R. 641-649). She was assessed with a Global Assessment Functioning Score (GAF) of 50, indicating serious symptoms. (R. 642, 646).

In April 2008, Plaintiff fell into a hypertensive crisis and was seen in the emergency room when it was determined that she was not compliant with medication. (R. 583-84). A CT scan of the brain dated April 19, 2008 showed Plaintiff's headaches may be caused by a right internal capsule

hypodensity likely representing an old lacunar infarct.(R. 586).

Plaintiff was admitted on July 30, 2008 with complaints of high blood sugar and pressure. (R. 625-655). She had stopped taking her medication for diabetes. (R. 660). Plaintiff was assessed with out of control diabetes, mildly out of control hypertension, mediastinal goiter and HIV infection, which remained untreated as Plaintiff refused to go to the clinic. (R. 661).

A treatment note dated August 16, 2008, indicated that Plaintiff was not compliant and not checking her blood sugar. (R.  573). On August 28, 2008, Dr. Pittack completed an updated mental assessment indicating that Plaintiff had no useful ability to make any occupational adjustments, performance adjustments, or personal social adjustments. (R. 777-80).

At the administrative hearing held on September 16, 2008, Plaintiff testified she was fifty years old, completed tenth grade, and last worked as a janitor. (R. 817). She stopped working in 2001 because she was sick and got laid off. (R.  817-18). She alleged disability due to headaches, insulin dependent diabetes, HIV, and depression. (R. 820). Plaintiff testified that her physicians did not want to give her medication for HIV and that she was not on medication. (R. 826-27). She was unsure if she had any HIV symptoms.(R. 827). She testified she had weakness and recurrent pneumonia and fell down several times a week. (R. 828-29). Plaintiff's case manager testified that she required help due to psychiatric problems, poor energy , poor motivation, isolation, difficulty interacting with others, irritability, and paranoia. (R. 865-36). Plaintiff had poor insight to her mental health problems and did not manage her medical problems well. (R. 836). The case worker saw Plaintiff two or three times a month.

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal

standards were applied. 42.U.S.C. Section 405(g); <u>Richardson v. Perales</u>, 402 U.S. 389, 401 91971); <u>Kelley v. Apfel</u>, 185 F.3d 1211, 1213 (11th Cir. 1999); <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance, and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. <u>Lewis v. Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1977)

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. <u>Foote v. Chater</u>, 67 F.3d 1553 (11th Cir. 1995); <u>Lamb v. Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. *See* <u>Bridges v. Bowen</u>, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *See* <u>Barnes v, Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991); <u>Baker v. Sullivan</u>, 880 F.2d 319 (11th Cir. 1989)

The restrictive standard of review set out above only applies to findings of fact. No presumption of validity attaches to the conclusion of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1235 (11th Cir. 1991; <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145-1146 (11th Cir. 1991)

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920 (a)-(f). The ALJ must

first determine whether the claimant is presently employed. If so, a finding of non-disability is made and the inquiry ends. 20 C.F.R. § 404.1529(b); 20 C.F.R. § 416.920 (b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment of combination of impairments. If such a finding is not made, then a finding of non-disability results and the inquiry ends. 20 C.F.R. § 404.1529(c); 20 C.F.R. § 416.920(c).

At step three, The ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. § 404.1520(d) subpart P, appendix I. "Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are proved, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. Gibson v. Heckler. 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1529(d); 20 C.F.R. § 416.920 (d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R § 404.1520 (e)-(f); 20 C.F.R. § 416.920 (e)-(f). The claimant bears the initial burden of proving that she is unable to perform past previous work. *See* Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir.1991). The inability to perform previous work relates to the type of work performed, not merely a specific prior job. *See* Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

Plaintiff first contends that the ALJ committed reversible error by neglecting to specify what weight he gave to some of the medical opinions on record as well as failing to explain why he rejected

other opinions on record without sufficient clarity.  An ALJ is required to "state with particularity the weight he gave different medical opinions and the reasons therefor." <u>Sharfarz v. Bowen</u>, 825 F.2d 278, 279 (11th Cir. 1987).  The failure of the ALJ to specify what weight is given to the treating physician's opinion or the reasons for giving it no weight is reversible error. <u>Schnorr v. Bowen</u>, 816 F.2d 578, 581 (11th Cir. 1987).  "We cannot, however, conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." <u>Ryan v. Heckler,</u> 762 F.2d 939, 941 (11th Cir. 1985).

The case record contains medical opinions from Afzal Kahn, M.D., the consulting physician (R. 198-199); Alejandro Arias, Psy.D, the consulting psychologist (R. 205-207); Larry Benovitz, M.D., the consulting psychiatrist (R. 441-448); Jozef Hudec, M.D., the consulting physician (R. 450-451); and two opinions from William Pittack, M.D., the treating psychiatrist. (R. 564-567 & 777-780). In his decision, the ALJ never explained what weight he gave to the opinions of Dr. Kahn, Dr. Arias, and Dr. Hudec. However, the ALJ explicitly rejected Dr. Benovitz's opinion and both of Dr. Pittack's assessments by stating that they were contrary to the other evidence of record. (R. 22, 23). The ALJ never explains how the record contradicted Dr. Benovitz and Dr. Pittack's opinions.

It may be construed that the ALJ implicitly rejected the opinions of Dr. Kahn, Dr. Arias, and Dr. Hudec because he gave "significant weight to the opinions of the State Agency physicians," i.e. the (non-examining) DDS medical consultants, who determined the claimant was "limited to light work activity with unlimited pushing and pulling."[1] (R. 23). The ALJ also stated that he "adopted the DDS physicians' opinion in part, and find that it is supported." *Id.* Again, the ALJ concluded that the non-examining DDS medical consultants' opinions were supported by the case record, but failed to

---

[1] This opinion is DDS physician Thomas Peele's opinion from July 31, 2006. ( R. 470-477). The earlier opinion of February 7. 2006 by DDS physician, James Andriole did not only indicate Plaintiff could perform unlimited pushing and pulling, but also indicated her could perform medium exertion work. (R. 208-215).

explain with sufficient clarity why in accordance with case law. Furthermore, the above opinion by the ALJ seems to be limited to the DDS physician opinions, meaning he did not make any reference to the DDS psychologist opinions (R. 216-233 & 452-469).

It was also improper to reject Dr. Pittack's opinion as he has been treating Plaintiff consistently since August 3, 2003. Section 404.1527(d)(2) states that the treating physician's opinion is entitled to at least controlling weight. 20 C.F.R. § 404.1527(d)(2).

Dr. Pittack's opinion is even supported by the case record. Dr. Arias' consultant evaluation of January 5, 2006 shows Plaintiff had impaired attention and concentration, slow pace, and she was aggravated by her recent eviction. (R. 206-207). Non-examining DDS psychologist Kevin Ragsdale found moderate limitations in social interaction and maintaining concentration, persistence and pace as well being limited to short and simple instructions. (R. 232). Consultative psychiatrist, Dr. Benovitz, noted multiple psychiatric conditions during his examination, noted that her hyperthyroidism may be contributing to her psychiatric presentation, and opined that she would deteriorate in a work or work-like setting. (R. 441-448). Consultative examiner Hudec noted Plaintiff was depressed during his examination and that her enlarged thyroid caused her voice to be deep and hoarse. (R. 450-451). Finally, non-examining DDS psychologist Dr. Ames-Dennard noted Plaintiff would have moderate limitations in concentration, persistence and pace, completing a normal work week, and responding appropriately to criticism form her supervisors. (R. 462, 466-467).

Moreover, since Dr. Pittack treated Plaintiff more than five years, he was clearly better able to provide a detailed, longitudinal picture of her medical impairments and functional limitations than consultants who examined her on one occasion or reviewed only the case file available at the time of their review. McCants v. Astrue, 493 F. Supp.2d 1217, 1228 (S.D. Ala. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). Additionally, it is well established by Social Security and Eleventh Circuit case law

that the opinions of non-examining physicians and psychologists are entitled to little weight  and

cannot constitute substantial evidence to support an administrative decision. Swindle v. Sullivan, 914

F.2d 222, 226 n.3 (11th Cir. 1990).

Therefore, this Court agrees with Plaintiff that the ALJ committed reversible error by

neglecting to specify what weight he gave to some of the medical opinions on record as well as

failing to explain why he rejected other opinions on record without sufficient clarity.

Next, Plaintiff contends that the ALJ committed reversible error by ignoring the testimony of

Plaintiff's case manager. In the instant case, the ALJ's decision does not reference any testimony by

Plaintiff's caseworker, Denyz Figueroa, at her hearing. (R. 835-842). This is clear error as Mr.

Figueroa's testimony provides impairment evidence.. Social Security regulations at 20 C.F.R. §§

404.1513(d), 416.913(d) state that:

> In addition to evidence from the acceptable medical sources listed in paragraph (a) of
> this section, we may also use evidence from other sources to show the severity of
> your impairment(s) and how it affects your ability to work. Other sources include, but
> are not limited to—
>
> (1) Medical sources not listed in paragraph (a) of this section (for example, nurse-
> practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and
> therapists);
>
> (2) Educational personnel (for example, school teachers, counselors, early
> intervention team members, developmental center workers, and daycare center
> workers);
>
> (3) Public and private social welfare agency personnel; and
>
> (4) Other non-medical sources (for example, spouses, parents and other caregivers,
> siblings, other relatives, friends, neighbors, and clergy).

Id.

Mr. Figueroa would qualify as a public social welfare agency personnel as well as a non-

medical source secondary to his time with Plaintiff helping her manage her affairs and keep medical

appointments. 20 C.F.R. §§ 404.1513(d)(3)(4), 416.913(d)(3)(4). This is similar to Lucas v. Sullivan,

918 F.2d 1567 (11th Cir. 1990), where the Eleventh Circuit noted that the ALJ's "decision does not review their testimony, nor give reasons for rejecting it." *Id.* Accordingly, the court directed that, on remand, the ALJ "should state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence, including all testimony presented at the previous hearing or any subsequent hearings." *Id.* (citing Gibson v. Heckler, 779 F.2d 619 (11th Cir. 1986); Brooks v. Sullivan, 882 F.2d 1375 (8th Cir. 1989).

Mr. Figueroa's testimony reveals Plaintiff's typical behavior of denying and/or downplaying her medical conditions; avoiding doctors or other medical help; and how her depression is the kind where she wants nothing new to happen. He also testified how he had to constantly encourage and motivate her to keep appointments, provide information, or to be more active. He further testified that she was his hardest client to deal with because of her isolative and uncooperative behavior. (R. 835-842). This testimony is evidence from a legitimate "other source" to show the severity of Plaintiff's impairments and how it affects her ability to work. 20 C.F.R. §§ 404.1513(d)(3)(4), 416.913(d)(3)(4).

Therefore, the ALJ committed reversible error in his handling of the medical opinions on file because his failure to address all medical opinions on file and what weight he gave them with sufficient clarity prevents a reviewing court from performing a meaningful judicial review.

Next, Plaintiff contends that the Commissioner committed reversible error because he did not appropriately consider Plaintiff's alleged hypertensive disease, HIV+ disease, chronic obstructive pulmonary disease, migraines, etc., as his review of the medical record included no discussion of these impairments and their impact on Plaintiff's ability to work.

By omitting the claimant's severe hypertension, HIV+ disease, chronic obstructive pulmonary disease, migraine headaches and neuropathy, as evidenced by the case record, from his findings of

severe impairments; the ALJ omitted significant exertional and non-exertional limitations that would otherwise substantially reduce the occupational base of medium, light and sedentary work. Ashford v. Barnhart, 347 F. Supp.2d 1189, 1193 (M.D. Ala. 2004);  Wuerth v. Astrue, Case No. 8:06-CV-1353-T-30TBM, 2008 WL 680211 at *5 (M.D. Fla. Mar. 7, 2008) (finding that remand was warranted because it was not possible to ascertain whether the ALJ considered each of the claimant's impairments.); Borries v. Astrue, Case No. 1:07-cv-00056-MP-WCS, 2008 WL 660327 (N.D. Fla. Mar. 7, 2008), (holding that the ALJ's findings were not based upon substantial evidence because, at step two, the ALJ should have found that the claimant suffered from the following additional "severe" impairments:  low intelligence, borderline personality disorder, anxiety disorder, and mild depressive disorder).

In the instant case, the medical evidence on record shows the claimant has the severe impairments of Insulin Dependent Diabetes Mellitus resulting in several hospitalizations (R. 238-252, 652-708); hyperthyroidism with enlarged thyroid causing severe impact on her voice box resulting in an embarrassing deep and hoarse voice (R. 442, 450-451, 588); severe hypertension resulting in numerous episodes of hypertensive urgency requiring medical attention; (R. 198-199, 573, 583, 588, 593, 596, 599, 601, 711-727, 731-753 759-762); severe depressive disorder (R. 564-567, 641-649, 777-780); migraine headaches (R. 490, 626-639); neuropathy, fatigue and weakness (R. 830); shortness of breath/chronic obstructive pulmonary disease (R.  486, 488, 496, 783); and HIV+ disease with very low CD4 levels, high viral load & numerous hospitalizations due to HIV+ related pneumonia. (R.  488, 580, 598, 594, 783). Yet, the ALJ only found Plaintiff's diabetes mellitus, hyperparathyroidism & 'affective mood disorder" to be her only severe impairments. This is reversible error as it is not possible to ascertain whether the ALJ appropriately considered the claimant's alleged hypertensive disease; HIV+ disease, chronic obstructive pulmonary disease, migraines, etc., as his

review of the medical record included no discussion of these impairments and their impact on Plaintiff's ability to work.

Furthermore, after implicitly and explicitly rejecting essentially all the medical source opinions on file, portions of the non-examining physician opinions, the ALJ, in essence, acted as a medical expert and constructed his own residual functional capacity. Moreover, the ALJ gave significant weight to the DDS examiner opinion finding Plaintiff can perform light work. (R. 471-474). Yet the ALJ used his "medical expertise" to find that Plaintiff retained the residual functional capacity to perform the higher exertional level of medium work. This is contrary to case law. The residual functional capacity is an assessment which is based upon all of the relevant evidence of a claimant's remaining ability to do work despite his impairments. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)). An Alabama district court held in Carlisle v. Barnhart, that the ALJ's rejection of the claimant's treating doctor's opinion was not supported by substantial evidence, but rather that the ALJ's determination was at odds with the medical records. 392 F. Supp. 2d 1287, 1293 (N.D. Ala. 2005). The court found that the ALJ had improperly "succumbed to the temptation to play doctor and make [his] own independent medical findings." *Id.* at 1295 (quoting Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996)).

Therefore it was reversible error for the ALJ's failure to at least find that Plaintiff's hypertensive disease, chronic obstructive pulmonary disease, HIV+ disease with its related symptomatology; migraine headaches, etc., were also severe impairments in addition to her diabetes mellitus, hyperthyroidism and "mood disorder."

Next, Plaintiff contends that the Commissioner committed reversible error because his Residual Functional Capacity determination was not supported by substantial evidence. A Florida court held that substantial evidence did not support the ALJ's finding that the claimant had the

residual functional capacity ("RFC") to perform the full range of "sedentary" work and that the ALJ failed to accord proper weight to all of the medical evidence of record.  Spivey v. Apfel, 133 F. Supp.2d 1292, 1303 (M.D. Fla. 2001).  In so finding, the court held that the ALJ's decision completely ignored the limitations imposed by the Social Security consultant that the claimant suffered from manipulative limitations which prevented her from performing repetitive reaching, handling, and fingering.  *Id.*  The ALJ also failed to properly consider all the limitations imposed by the claimant's treating physician, which were consistent with those limitations imposed by the consulting physician.  *Id.* at 1303-04.  The court noted that both of these doctors' assessments included "far greater limitations than those found by the ALJ."  *Id.* at 1304.  The court directed that on remand, the Commissioner should develop a full and fair record of the claimant's residual functional capacity, in light of the limitations assessed by the physicians of record, and obtain the opinion of a vocational expert regarding the claimant's ability to perform the "full range" of sedentary work in light of her exertional and non-exertional limitations.  *Id.*

      This Court agrees with Plaintiff that the instant case is on point with Spivey. The treating source, consulting source, non-medical source (Plaintiff's caseworker), and non-examining State Agency psychologists' opinions show Plaintiff has significant physical and mental limitations. All these limitations were not properly considered by the ALJ, who improperly gave significant weight to part of the non-examining DDS physician opinions, to find a less restrictive RFC for Plaintiff, contrary to the evidence on record. Thus, this case should be remanded to develop a full and fair record and to obtain testimony from a vocational expert.

      Plaintiff also contends that the Commissioner committed reversible error when it determined that Plaintiff retained the ability to return to her past relevant work.  In his decision, the ALJ found Plaintiff could return to her past relevant work as a janitor. This is clear error. While the ALJ found

Plaintiff could return to her past relevant work, his finding is essentially conclusory contrary to Social Security Ruling 82-62. *See* <u>Davison v. Halter</u>, 171 F. Supp.2d 1282, 1285 (S.D. Ala. 2001) (noting that SSR 82-62 requires that in finding that a claimant has the ability to perform his or her past relevant job, the decision "must contain among the findings, a finding of fact as to the claimant's residual functional capacity, a finding of fact as to the physical and mental demands of the past job/occupation, and a finding of fact that the claimant's residual functional capacity would permit a return to the past job or occupation.") (quoting SSR 82-62); s*ee also* <u>Bruet v. Barnhart</u>, 313 F. Supp.2d 1338, 1346-47 (M.D. Fla. 2004) (holding that the ALJ did not apply the correct legal standard in finding that the claimant could return to her past relevant work as a receptionist because he failed to properly follow SSR 82-62 in making this finding); <u>Childs v. Astrue</u>, Case No. 8:07-cv-299-T-TBM, 2008 WL 686160 at  *4 n.1. (M.D. Fla. Mar. 10, 2008) (noting that the ALJ's decision lacked any explicit findings concerning the functional demands of any of the claimant's past work, but only had the blanket conclusion that the claimant could still do this type work and, as such, it is unclear how the ALJ arrived at this conclusion).

In the instant case, the ALJ made a blanket conclusion and like his handling of the medical evidence and opinions, as discussed above, it is unclear how he reached his conclusions. Therefore, the Commissioner's decision should be reversed.

Plaintiff also contends that the ALJ improperly considered her testimony. In his decision, the ALJ discredited Plaintiff's testimony by finding she was non-compliant with treatment recommendations and medication. (R. 23).  However, case law states that non-compliance can be justified in certain cases. While a remediable or controllable medical condition is generally not disabling, when a claimant cannot afford the prescribed treatment and can find no way to obtain it, she is excused from noncompliance.  <u>Dawkins v. Bowen</u>, 848 F.2d 1211, 1213 (11th Cir. 1988). The

burden of proving unjustified noncompliance is on the Commissioner. *Id.* In Dawkins, the Eleventh Circuit stated that it agreed with every circuit to consider the issue that "poverty excuses noncompliance." *Id.* (citing Loveless v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987) ("To a poor person, a medicine that he cannot afford to buy does not exist."); Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986) (failure to follow prescribed treatment does not preclude reaching the conclusion that a claimant is disabled when the failure is justified by lack of funds); Dover v. Bowen, 784 F.2d 335, 337 (8th Cir. 1986); Teter v. Heckler, 775 F.2d 1104, 1107 (10th Cir. 1985).

Thus while a remedial or controllable medical condition is generally not disabling, when a "claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law." Taylor v. Bowen, 782 F.2d 1294, 1298 (5th Cir. 1986). Additionally, another court noted that the lack of treatment is "not surprising or indicative of an absence of significant illness in light of the consulting psychologist's finding that plaintiff has poor insight into her mental condition," and the fact that her "failure to obtain additional treatment could also be due to her obviously low economic status." Burroughs v. Massanari, 156 F. Supp.2d 1350, 1364 (N.D. Ga. 2001).

Additionally, Social Security Ruling 96-7p provides that an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment" without first considering the evidence of record which may explain "infrequent or irregular medical visits or failure to seek medical treatment." This Ruling further states that the "adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner." The Ruling sets forth specific examples of valid reasons for not obtaining treatment, including the following:

* The individual's daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely, avoiding physical or mental stressors that would exacerbate the symptoms.  The individual may be living with the symptoms, seeing a medical source only as needed for periodic evaluation and renewal of medications.

* The individual may be unable to afford treatment and may not have access to free or low-cost medical services.

SSR 96-7p.

The instant case shows Plaintiff is unable to afford treatment and medication secondary to her socioeconomic status. (R. 583, 641-649, 835-836). Additionally, evidence, including Mr. Figueroa's testimony shows Plaintiff 's daily activities are structured to "minimize symptoms to a tolerable level or eliminate them entirely, avoiding physical or mental stressors that would exacerbate the symptoms. The individual may be living with the symptoms, seeing a medical source only as needed for periodic evaluation and renewal of medications." This is seen in Plaintiff's poor motivation to groom herself, change out of her nightclothes, and get out of bed and dislike to deal with anything new. (R. 838-839).

Furthermore, the ALJ also found Plaintiff was not credible because she testified to a "very limited lifestyle with little or no physical exertion and constant discomfort were not in keeping with the findings reported by attending and examining physicians." (R. 23). Plaintiff's testimony is supported by her case manager's testimony. (R. 835-842).  Furthermore, Plaintiff's testimony in this respect is also supported by the findings of her attending and examining physicians, contrary to the ALJ's determination. Dr. Pittack (R. 564-567, 641-649, 777-780); Dr. Arias (R. 205-207); Dr Kahn (R.198-199); Dr. Benovitz. (R. 441-448); Dr. Hudec (R. 450-451); and even the DDS non-examining case reviewers. (R. 208-215, 226, 232, 462, 467, 471-474).

Therefore, the ALJ also committed reversible error in discrediting Plaintiff's testimony. and as a result, her testimony must, at least, be held as true in accordance with  Foote v. Chater, 67 F.3d

1553, 1561 (11th Cir. 1995). The "'[f]ailure to state a reasonable basis for rejecting such testimony mandates the testimony be accepted as true as a matter of law.'" *Id.* (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). A reversal is warranted if the decision contains no indication of the proper application of the pain standard. Ortega v. Chater, 933 F. Supp. 1071, 1076 (S.D. Fla. 1996) (holding that the ALJ's failure to articulate adequate reasons for only partially crediting claimant's complaints of pain resulted in reversal and award of benefits); *see also* Venette v. Apfel, 14 F. Supp.2d 1307, 1314 (S.D. Fla. 1998).

Plaintiff's final contention is that the ALJ's determination that "in the alternative, Plaintiff is not disabled in accordance to Medical Vocational Rules 202.17 and 203.25" is not supported by substantial evidence. In the instant case, the ALJ relied on Medical Vocational Rule 202.17 and 203.25 to find Plaintiff not disabled in the event that his determination that Plaintiff could return to her past relevant work was flawed. (R. 24-25). The ALJ's determination that Plaintiff meets Medical Vocational Rules 202.17 and 203.25 are flawed for the same reason as his RFC determination was flawed– it was based on his own hunch after rejecting the treating and examining opinions on record and partially relying on the non-examining State Agency physician opinions. Furthermore, he did not identify or discuss all the severe impairments documented on record. As a result, the ALJ did not develop the record with respect to the claimant's non-exertional limitations, which renders the Medical Vocational Rules inapplicable. As the Eleventh Circuit stated in Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999):

> When the claimant cannot perform a full range of work at a given level of exertion or the claimant has non-exertional impairments that significantly limit basic work skills, exclusive reliance on the grids is inappropriate. In such cases, the Commissioner's preferred method of demonstrating that the claimant can perform other jobs is through the testimony of a VE.

*Id.* (citing <u>Foote v. Chater</u>, 67 F.3d 1553 (11th Cir. 1995)); *see also* <u>Allen v. Sullivan</u>, 880 F.2d 1200, 1202 (11th Cir. 1989); <u>Welch v. Bowen</u>, 854 F.2d 436, 439 (11th Cir. 1988); <u>Walker v. Bowen</u>, 826 F.2d 996, 1003 (11th Cir. 1987); <u>Francis v. Heckler</u>, 749 F.2d 1562, 1566 (11th Cir. 1985).

Plaintiff's mental and physical impairments as documented in the case record with respect to her Diabetes, hyperthyroidism, HIV, hypertension, migraine headaches, chronic obstructive pulmonary disease, depression and frequent hospitalization as a result of these conditions show that Plaintiff has significant non-exertional and exertional limitations that would erode her capacity to perform work at any exertional level. As a result, vocational expert testimony was required. Therefore, the ALJ's determination that Plaintiff met Medical Vocational Rule 202.17 and 203.25 was not supported by substantial evidence, warranting remand of this case.

### III. CONCLUSION

Based on the foregoing, the Court finds that the decision by the ALJ is not supported by substantial evidence and that the correct legal standards were not applied. Therefore, it is hereby

ORDERED that the Plaintiff's Motion for Summary Judgment is hereby **GRANTED** and the Defendant's Motion for Summary Judgment is hereby **DENIED**.  It is further

ORDERED that the decision of the Commissioner be **REVERSED AND REMANDED** under Sentence Four of 42 U.S.C. § 405(g) to the Commissioner to conduct further proceedings as follows:

**ON REMAND,** The ALJ will:

Reconsider all the treating and examining medical opinions on record and state with particularity the weight he gave the medical opinions and the rationale therefore.

Consider the testimony provided by Plaintiff's case worker, Denyz Figueroa, at the hearing in accordance with 20 C.F.R. Sections 404.1513(d), 416.913(d)(3)(4) as well as SSR 06-3p. The ALJ

is instructed to state what weight he accorded this item of impairment evidence and the reasons for accepting or rejecting this testimony as well as any testimony presented at any subsequent hearing.

Reconsider the severity of Plaintiff's hypertensive disease, chronic obstructive pulmonary disease, HIV+ disease and mood disorder with its related symptomatology. The ALJ shall obtain testimony from a medical expert regarding the severity of these impairments and its impact on Johnson's ability to perform SGA.

Reevaluate Plaintiff's RFC, taking into consideration all of Plaintiff's external and non-external limitations on record.

Reconsider Plaintiff's credibility in compliance with SSR 82-62.

Reconsider Plaintiff's ability to return to past relevant work in full compliance with SSR 82-62. If the sequential evaluation process proceeds to step five, the ALJ shall obtain evidence from a vocational expert.

**DONE AND ORDERED** in Chambers at Miami, Florida this 1st day of April, 2010.

**BARRY L. GARBER**
**UNITED STATES MAGISTRATE JUDGE**